IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| CITY OF JEFFERSON and | ) | |
| CITY OF SPRINGFIELD, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 04-4099-CV-C-NKL |
| | ) | |
| CINGULAR WIRELESS, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

This case raises the question of whether the Plaintiffs can collect gross receipt taxes from the Defendants for the mobile telephone component of their businesses. The Court concludes that the Plaintiffs' gross receipt tax ordinances are enforceable and that they apply to mobile telephone services just as they apply to land line telephone services. Accordingly, the Court will grant the Plaintiffs' Motion for Partial Summary Judgment (Doc. 95) and Plaintiff Springfield's Motion for Summary Judgment on Sprint's Counterclaim (Doc. 157).

**I.    Background**

Plaintiffs Jefferson City and Springfield (collectively "Cities") are Missouri constitutional charter cities. Springfield's charter, which was adopted in 1953, sets forth a specific list of business categories that are subject to taxation. That list includes "telephone companies." Springfield City Charter, art. XVIII § 18.1(3) (Def. Ex. 15, p.

1

116). Jefferson City's charter, which was adopted in 1986, is less specific—it provides for the taxation of all businesses that Missouri law allows to be taxed by "constitutional charter cities, cities of the first, second, third or fourth class, or cities of any population group." Jefferson City Charter, art. XI § 11.1(a) (Def. Ex. 26, p. 26). Because it is undisputed that Missouri law allows municipalities to tax telephone companies, Jefferson City, by incorporation, has included telephone companies in its list of businesses subject to taxation.

Pursuant to their respective charters, each plaintiff has enacted a gross receipts ordinance which imposes a tax on telephone services. Springfield's ordinance, as originally enacted in 1968, provided as follows:

> Every person engaged in the business of supplying telephone and telephonic service within the City shall pay as a license tax a sum equal to 6% of the gross receipts from such business.

Springfield Code § 20-22 (January 2, 1968) (Def. Ex. 32). In 2000, the ordinance was amended to provide as follows:

> Every person engaged in the business of supplying telephones, and telecommunications and telephonic service, and telecommunications services, within the city shall pay as a license tax a sum equal to six (6) percent of the gross receipts from such business.

Springfield Code § 70-452 (2000) (recodified June 2, 2003) (Def. Ex. 5).

Jefferson City's ordinance as amended in 1980 provides as follows:

> Every person, firm or corporation engaged in the business of . . . furnishing telephone service, telecommunication services for residential, commercial, business, manufacturing, industrial, or for any other purposes in the City of Jefferson, who shall furnish the services within the City, shall pay to the City a tax equal to seven (7%) per cent of the gross receipts solely derived

2

from . . . charges for local telephone or telecommunication services in said
City as a license tax for conducting such business within the City.

Jefferson City Ordinance No. 9485 (1980) (Def. Ex. 22).

Defendants are telecommunication companies which provide a variety of services, including mobile telephone services. For the purposes of this case, however, the Defendants prefer to use the term "Commercial Mobile Radio Service" ("CMRS") to describe the mobile telephone services which they sell.[1]

Whatever name one chooses to call the Defendants' services, it is clear that the Defendants earn money by providing "Commercial Mobile Radio Services" in Springfield or Jefferson City. Defendant Nextel admits that it provides CMRS in Jefferson City and Springfield. (Def. Response to Pl. Statement of Facts [Doc. 146] ¶ 22.) Defendant Alltel's website indicates that the company provides coverage in the Springfield area. (Pl. Ex. 21.) Cingular denies that it provides such services in either city, but admits that its affiliates do. (Doc. 146 ¶ 13.)

It is also clear that the Defendants have not paid all of the taxes that, according to Plaintiffs, are due under the gross receipts ordinances. Cingular admits that it has never paid gross receipts taxes to either city. (Doc. 146 ¶¶ 18, 20.) Nextel paid Jefferson City gross receipts taxes for the period of December 1999 through September 2000 and has never paid gross receipts taxes to Springfield. (Doc. 146 ¶¶ 27, 29.) Alltel claims that it

---

[1]Because the Court finds that "Commercial Mobile Radio Services" are mobile telephones, the Court will generally refer to these devices as mobile telephones, except when discussing the record where the Defendants refer to these devices as Commercial Mobile Radios.

3

does not have sufficient personal knowledge about whether it has paid gross receipts taxes relating to its mobile telephone services in Springfield. (Doc. 146 ¶ 38.)

## II. Plaintiffs' Motion for Partial Summary Judgment

Despite the voluminous briefing in this case, the primary issue to be resolved is relatively simple. Are the Defendants in the business of providing telephone services in the two Cities? If they are, then the Cities' ordinances require them to pay a gross receipts tax.

### A. Do the Defendants Supply Telephone Services?

Defendants claim that the Cities' charters and tax ordinances do not apply to them because they provide Commercial Mobile Radio Services and the Cities' charters and ordinances refer to telephone services.

In support of that claim, the Defendants devote much attention to discussing legislative history. For example, the Defendants point out that Springfield's gross receipts tax ordinance was amended in July 2000 to include taxation for telecommunications services. Similarly, Jefferson City enacted a telecommunication tax ordinance in 1979 to supercede a prior ordinance that taxed only telephone services. The Defendants urge the Court to conclude that this legislative history amounts to an admission on the part of the Cities that telephone services are not the same thing as telecommunications services.

Plaintiffs, however, have now conceded that they are not seeking to impose the gross receipts tax on all of the Defendants' telecommunication business. Rather,

4

Plaintiffs have limited their current claim to gross receipts tax on the mobile telephone component of Defendants' business. Therefore, the fact that the Cities attempted to broaden the coverage of their ordinances to cover telecommunication services is irrelevant. The charters and ordinances of the Cities included a gross receipts tax on telephone services for decades before the telecommunication amendment, and the Cities are now seeking payment only for "telephone services," not such things as pagers, internet access or "walkie talkies."

Even though the Cities have now limited their claim to telephone services, Defendants persist, arguing that the phrase "telephone services" is ambiguous and, therefore, extrinsic evidence, including legislative history, is still needed. For example, Defendants seek to depose city representatives to find out whether the term "telecommunications" was intended to cover mobile telephone services. If so, Defendants argue that this is evidence that the original ordinance covering telephone services could not have been intended to cover the new wireless technology.

Because the Court finds that the Cities' charters and ordinances are unambiguous, legislative history and extrinsic evidence will not be considered. *See State ex rel. Maryland Heights Fire Protection Dist. v. Campbell*, 736 S.W.2d 383, 387 (Mo. 1987) (en banc) ("It is a basic rule of statutory construction that words should be given their plain and ordinary meaning whenever possible. Courts look elsewhere for interpretation only when the meaning is ambiguous or would lead to an illogical result defeating the purpose of the legislature.") (citations omitted); *State ex rel. Bell v. Phillips Petroleum*

*Co.*, 160 S.W.2d 764, 769 (Mo. 1942) ("If [the statute] is clear and unambiguous, it must be construed in accordance with its manifest intent and we may not search for a meaning beyond the statute itself."). *See Cook v. Newman*, 142 S.W.3d 880, 887 (Mo. Ct. App. 2004) (en banc) ("Only when a statute's language is ambiguous or uncertain or if its plain meaning would lead to an illogical result will extrinsic matters, such as the statute's history, surrounding circumstances and objectives to be accomplished through the statute, be considered.") (citing *Riordan v. Clark*, 67 S.W.3d 610, 613 (Mo. Ct. App. 2001)).

When, as in this case, the legislative body has not defined a term or phrase at issue, the Court is required to give the words their usual and ordinary meaning. *State v. Harris*, 156 S.W.3d 817, 822 (Mo. Ct. App. 2005). In interpreting a statute enacted a number of years ago, it is appropriate to consider how words and phrases were defined around the time of the statute's enactment. *See United States v. Lachman*, 387 F.3d 42, 51 n.11 (1st Cir. 2004) (citing *Lamar v. United States*, 241 U.S. 103, 113 (1916)). Accordingly, the Court has consulted a number of older dictionary definitions of the word "telephone."

Most of the dictionaries define "telephone" quite broadly. For instance, the 1969 American Heritage Dictionary states that a "telephone" is "[a]n instrument that directly modulates carrier waves with voice or other acoustic source signals to be transmitted to remote locations and that directly reconverts received waves into audible signals; especially, such an instrument connected to others by wire." The general definition does not require that the instrument be connected to others by wire, but gives wired services as one example, suggesting that other technologies were contemplated. The American

6

Heritage Dictionary retained the same definition in its 1982 publication. Similarly, the 1966 Webster's Third New International Dictionary—the very dictionary that the Defendants in oral argument stated is "the dictionary of choice . . . for the Missouri Supreme Court" (Tr. at 34)—defines the word as "an instrument for reproducing sounds esp. articulate speech at a distance."[2] Taken together, these definitions reveal that being connected to a wire is not an essential characteristic of a telephone, even if it is a common one. CMRS—which converts an acoustic source into a signal for transmission to remote locations—falls squarely within these definitions.

Even today, dictionaries continue to define telephone in substantially the same way it was done at the time the charters and the ordinances were enacted. For example, the Fourth Edition of the American Heritage Dictionary, published in 2000, defines "telephone" as "[a]n instrument that converts voice and other sound signals into a form that can be transmitted to remote locations and that receives and reconverts waves into sound signals." (Fourth Edition, 2000). The Court has also consulted what is perhaps the best indicator of common usage available: Google.com.[3] A Google search of over eight billion web pages yields over 200,000 results for the phrase "wireless telephone," 480,000 results for "cordless telephone," 680,000 results for "cellular telephone," and

---

[2] The Defendants correctly pointed out during oral argument that the dictionary provides two examples of telephones, both of which include wires. However, the dictionary's explanatory notes indicate that such examples are not meant to be exhaustive. *Id.*, explanatory note 12.2.2.

[3] Google is a comprehensive online index of over eight billion web pages. Google's index, which is updated constantly, includes pages created by individuals, organizations, businesses, and governmental entities. It is, therefore, particularly well-suited to discerning common usage of nearly any term.

700,000 for "mobile telephone." These results confirm that, even in today's age of innovation, a "telephone" need not be connected to wires. People understand that if you put it up to your ear and you speak into a microphone and someone some distance away is able to hear you, you are using a telephone.

In sum, the word "telephone," as it is commonly used, means essentially the same thing as it meant when the Cities' charters and ordinances were adopted. Indeed, usage of the word has not changed much since 1908, when a New York court stated that "[t]he telephone is simply an instrument by which two persons may talk directly to each other." *Gilpin v. Savage*, 112 N.Y.S. 802, 805 (N.Y. Sup. 1908), *rev'd on other grounds*, 94 N.E. 656 (N.Y. 1911). Furthermore, the court's conclusion is consistent with other courts which have considered the same or analogous issues. *See City of Sunset Hills v. Southwestern Bell Mobile Systems, Inc.*, 14 S.W.3d 54, 59 (Mo. Ct. App. 1999); *Airtouch Communications, Inc. v. Dep't of Revenue, State of Wyoming*, 76 P.3d 342, 349-51 (Wyo. 2003); *Southwestern Bell Mobile Systems, Inc. v. Arkansas Public Service Commission*, 40 S.W.3d 838, 843 (Ark. Ct. App. 2001); *City of Lebanon Junction v. Cellco Partnership*, 80 S.W.3d 761 (Ky. Ct. App. 2001); *Campanelli v. AT&T Wireless Services, Inc.*, 706 N.E.2d 1267 (Ohio 1999); *Central Kentucky Cellular Telephone Co. v. Commonwealth of Kentucky, Revenue Cabinet*, 897 S.W.2d 601, 603 (Ky. Ct. App. 1995). *City of Sunset Hills* is particularly important given this Court's obligation to follow the law of the State of Missouri. The Missouri court, in *City of Sunset Hills*,

8

Case 2:04-cv-04099-NKL   Document 221   Filed 06/09/05   Page 8 of 17

clearly believed, as does this Court, that a Commercial Mobile Radio Service is a telephone.

This is not to say that telephone technology has not progressed since the Cities' charters and ordinances were adopted. To the contrary, many significant advancements have occurred. The rotary dialing system has given way to tone dialing. Satellite technology enables customers to place calls to other continents, while cordless technology enables them to do so from their backyards. And twisted copper telephone wires are being replaced with fiber optics. Each of these new technologies could be described in technical terms that may sound quite unlike our current understanding of telephone services. But that does not change the fact that these technologies, just like "Commercial Mobile Radio Services," are created by "telephone" companies to provide what we all think of as "telephone services."

If the Defendants' approach were adopted, then each time that a new technology were incorporated into an existing service or product, the ordinances and charters of each city would have to be changed or no taxes could be collected. At some point on the spectrum, innovation might be so extreme as to alter the very function of the disputed product or service. The mobile telephone, however, is the functional equivalent of land line based telephones, which have existed for more than a hundred years. Thus, the term "telephone" in the Cities' charters and ordinances is generic enough to encompass the Defendants' "Commercial Mobile Radio Services."

B.   Whether the Defendants Furnish Services "Within the City"

9

Both ordinances specify that the gross receipts tax is limited to telephone services "within the city." Springfield's ordinance imposes a tax on "[e]very person engaged in the business of supplying . . . telecommunications and telephonic service, and telecommunications services, within the city." Springfield Code § 70-452 (2000) (recodified June 2, 2003) (Def. Ex. 5). Similarly, Jefferson City's ordinance imposes a tax on "[e]very person, firm or corporation engaged in the business of . . . furnishing telephone service, telecommunication services . . . in the City of Jefferson [and] who shall furnish the services within the City." Jefferson City Ordinance No. 9485 (1980) (Def. Ex. 22).

The record indicates that the Defendants provide some mobile telephone services within one or both Cities. Defendant Nextel admits that it provides CMRS in Jefferson City and Springfield. (Def. Response to Pl. Statement of Facts [Doc. 146] ¶ 22.) Defendant Alltel's website indicates that the company provides coverage in the Springfield area. (Pl. Ex. 21.) Cingular denies that it provides such services in either city, but admits that its affiliates do. (Doc. 146 ¶ 13.)

Defendants contend, however, that these ordinances are ambiguous in the context of mobile telephone services because it is difficult to determine where the services are provided. Telephone subscribers can travel outside the city's limits and continue to use their mobile phone. A consumer may pass through several cities in the course of a single phone call. In addition, a resident of one city can readily utilize mobile telephone services while located within the boundaries of another city. Specifically, the Defendants

10

argue that mobile telephone services are "inherently mobile and therefore may never occur 'within the city'. . . ." Def. Suggestions in Opposition, p. 46 (emphasis added). This argument is meritless for purposes of the issue of liability. While these phones may be mobile, the service has to occur somewhere, and there is evidence that some of the Defendants' mobile telephone services occur in Jefferson City or Springfield. Quantifying with precision the location where a call is made or received may be a problem in the damage phase of this dispute. As to liability, however, there is uncontroverted evidence that some of the Defendants' mobile telephone services occur within the limits of Jefferson City or Springfield.

### C. Hancock Amendment and the Mobile Telecommunications Sourcing Act

Because the Court has found that the historical tax ordinances of Springfield and Jefferson City have long covered telephone services, and commercial mobile radios are in fact telephones, it is unnecessary to address the Defendants' argument that recent amendments to these ordinances to extend their coverage to telecommunication services violate the Hancock Amendment or the Defendants' argument that the recent amendments to those ordinances were improperly adopted. The Cities' ordinances and charters which tax telephone services predate the Hancock Amendment and Plaintiffs are only seeking to collect taxes for telephone services, not telecommunication services.

The Court also rejects the Defendants' argument that the Cities' ordinances do not comply with the Mobile Telecommunications Sourcing Act, 4 U.S.C. §§ 116-126. Plaintiffs have not sought to tax Defendants for services provided to non-residents and

11

Plaintiffs are not relying on the Mobile Telecommunications Sourcing Act as its authority for the gross receipts tax which they seek to collect. Plaintiffs rely on their own charters and ordinances. Again, this issue may be relevant to the amount of taxes which Defendants owe, but the Mobile Telecommunications Sourcing Act did nothing to prevent Plaintiffs from collecting taxes for services provided within their city limits.

### D. Is the Gross Receipts Tax a Disguised Sales Tax?

Defendants argue that because Jefferson City's gross receipts tax is based on the price which is paid by Defendants' customers for mobile telephone services, it is in fact a sales tax, not a gross receipts tax. As a sales tax, it is invalid because it was not approved by the voters as required by the City Sales Tax Act. Section 94.510, Revised Statutes of Missouri.

Plaintiffs, as a matter of law, have refuted this argument by showing that the gross receipts tax is applied to more than the revenues derived from mobile telephone services supplied to consumers. For example, some of the Defendants' gross receipts are derived from access charges to other carriers. (Tr. 21.) Such receipts do not constitute sales taxes. Furthermore, although the portion of the gross receipts tax which is based on charges to mobile telephone consumers is reduced by the amount of other taxes paid by those consumers before the gross receipts tax is calculated, *Miller v. City of Springfield*, 750 S.W.2d 118, 120 (Mo. Ct. App. 1988), makes it clear that this does not transform a gross receipts tax into a sales tax.

### E. Whether the Plaintiffs Complied with Missouri Tax Collection Statutes

12

The Defendants argue that the Cities failed to comply with various Missouri tax collection statutes, including Mo. Rev. Stat. §§ 136.076, 136.365, 32.053, and 143.903. However, these statutes do not apply to constitutional charter cities. Chapter 136, as its title indicates, applies to "Collection of State Taxes." Chapter 32 applies to the "State Department of Revenue." And Chapter 143 applies to State "Income Tax." None of these statutes contains language suggesting that it applies to constitutional charter cities such as Springfield and Jefferson City, nor have the Defendants cited a case in which any of these statutes were applied to constitutional charter cities. Instead, they directed the Court to *City of Manchester v. Southwestern Bell Telephone*, No. 04-CV-1308, slip op. (E.D. Mo. Apr. 28, 2004), which held that third and fourth class cities are required to collect taxes in the same manner as the State of Missouri. However, Missouri Revised Statute §§ 94.150 and 94.310 (1998), which only apply to third and fourth class cities, specifically provide that those cities are required to follow state tax collection procedures. In contrast, Springfield and Jefferson City, as charter cities, are governed by § 94.310, for purposes of tax collection. In that section, unlike §§ 94.150 and 94.130, there is no requirement that charter cities must collect taxes in the same way as the State. Given the rule of statutory construction, *inclusio unius est exclusio alterius*, the only reasonable interpretation of Missouri State law is that charter cities are not required to follow state tax collection procedures.

### F. Whether Springfield Failed to Follow its Own Ordinances

13

The Defendants also argue that Springfield is barred from collecting gross receipts taxes in court because Springfield failed to follow the administrative tax collection procedures in its own ordinances. For example, Section 70-152 of the Springfield Code states as follows:

> Whenever the director [of finance] determines that a person has failed to pay a required license fee or tax under this chapter, the director shall notify such person of this determination, which determination shall be an assessment of the license fee or tax which is due and owing, plus all penalties including interest. The notice of the director shall provide that the assessment shall become final ten days after the date that the notice of assessment is mailed by registered or certified mail or delivered to the person or his registered agent, unless such person filed a request in writing with the director requesting a hearing within ten days after the notice is mailed or delivered.

Springfield Code § 70-152 (Def. Ex. 14).

It is undisputed that the Springfield Director of Finance neither sent a notice of assessment to the Defendants nor advised them of their right to a hearing. It is also undisputed that the Defendants were required by Springfield Code Section 70-454 to provide, by January 15, April 15, July 15 and August 15, of each year, a statement of their gross receipts for the preceding three months. Defendants never complied with this requirement, arguably interfering with Springfield's ability to invoke its administrative procedures by sending out a notice of assessment..

Regardless of who is at fault for the failure of both parties to seek administrative relief, the question remains whether the city is precluded from using the courts to collect these taxes. The Defendants claim that because the Springfield Code specifies only one procedure for collecting gross receipts tax, the Springfield City Council must have

14

intended for the administrative procedures to be the sole remedy. In support of its argument, the Defendants again cite *City of Manchester v. Southwestern Bell Telephone*, No. 04-CV-1308, slip op. (E.D. Mo. Apr. 28, 2004), which suggests that a city could not pursue in court a common law claim for tax collection if an applicable statute or ordinance already provides an adequate remedy. *Also see State ex rel. Hayes v. Snyder*, 41 S.W. 216, 217 (Mo. 1897); *Kansas City v. Field*, 226 S.W. 27, 32 (Mo. 1920); *State ex rel. George v. Dix*, 141 S.W. 445 (Mo. Ct. App. 1911).

First, it is not clear to the Court that Springfield's administrative process for tax collection under these circumstances is effective because Defendants have not provided the required statement of their gross revenues. Even the cases cited by Defendants recognize that the collection procedure established by statute or ordinance must be adequate.

Second, the issue now before the Court is a limited one—whether the Cities' charters provide for the taxation of the Defendants' mobile telephone services. This is a purely legal issue, dependent on the interpretation of codes and statutes and uncontroverted facts. A separate line of Missouri cases, more recent in origin than *Hayes* and its progeny, provide that a purely legal issue can be addressed in court even if administrative procedures are provided. This is because administrative bodies have no special expertise when nonfactual issues are raised. *See Premium Std. Farms, Inc. v. Lincoln Township of Putnam County*, 946 S.W.2d 234, 238 (1997); *City of Bridgeton v. City of St. Louis,* 18 S.W.3d 107 (Mo. Ct. App. 2000). In such situations, there should be no inference that the legislative body intended that all legal issues had to be resolved in

the administrative proceeding rather than in court merely because the legislative body created an administrative process to collect taxes.  The Court understands that there may be disputed factual issues concerning the amount of taxes owed.

Given the assessment procedures contained in the Springfield ordinances, it is difficult to understand how the Defendants would be prejudiced if Springfield were to forego the administrative process.  The procedure sought by the Defendants is a hearing to be held within seven days before a hearing officer selected by the city manager of Springfield, with no rules of evidence.  If the city manager's hearing officer rules in favor of the city, the taxpayers must pay into the city's coffers the taxes due before any appeal of the assessment is permitted.

At this juncture, however, the dispute over the amount of taxes owed is not before the Court.  Therefore, the Court need not decide whether Defendants have a right to litigate the amount of taxes owed before an administrative officer appointed by the city manager of Springfield.

## III. Springfield's Motion for Summary Judgment as to Sprint's Counterclaim

Sprint has filed a Counterclaim against Springfield seeking a declaratory judgment that Springfield exceeded its authority in enacting its gross receipts ordinance. Springfield has moved for summary judgment as to that Counterclaim.  In its response, Sprint raises substantially the same arguments that the other Defendants made in response to the Cities' Motion for Partial Summary Judgment.  For the reasons discussed above, the Court rejects these arguments and finds that Springfield's tax ordinances are valid and

enforceable against Spring. Accordingly, summary judgment will be granted in Springfield's favor on Sprint's Counterclaim.

**IV.     Conclusion**

Accordingly, it is hereby

ORDERED that the Plaintiffs' Motion for Partial Summary Judgment [Doc. 95] is GRANTED. It is further

ORDERED that Springfield's Motion for Summary Judgment as to Sprint's Counterclaim [Doc. 157] is GRANTED.

  s/ NANETTE K. LAUGHREY
NANETTE K. LAUGHREY
United States District Judge

Dated:   June 9, 2005
Jefferson City, Missouri

17
Case 2:04-cv-04099-NKL   Document 221   Filed 06/09/05   Page 17 of 17