# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

CITY OF JEFFERSON, et al.,      )
                             )
         Plaintiffs,      )
                             )
        v.               )      Case No. 04-4099-CV-C-NKL
                             )
CINGULAR WIRELESS, LLC, et al.,  )
                             )
        Defendants.     )

## ORDER

The City of Springfield ("Springfield") levies a gross receipts tax on all "telecommunications and telephonic services" supplied "within the city" of Springfield. *See* Springfield Municipal Ordinance § 70-452. Because the Defendants, Alltel Communications, Inc., Nextel West Corporation, Southwestern Bell Wireless LLC, and Cingular Wireless LLC ("Defendants"), take the position that commercial mobile radio services ("CMRS") are not "telecommunications and telephonic services," they do not pay gross receipts tax on cell phone[1] services that they provide in Springfield.

In April 2004, Springfield's counsel sent a demand letter to these Defendants requesting payment of five years' worth of gross receipts taxes. The letter stated that if payment was not received by April 29, 2004, Springfield would proceed with all legal

---

[1]Commercial mobile radios are commonly referred to as cell phones, both by lay people and the telecommunications industry. That is the term the Court will use in the remainder of the Order, unless referring to the Defendants' use of the term, CMRS.

Case 2:04-cv-04099-NKL   Document 476   Filed 07/03/07   Page 1 of 23

remedies. When the Defendants did not comply, Springfield filed the present lawsuit on May 12, 2004, to collect the taxes due.

Soon after filing suit, Springfield moved for partial summary judgment to determine whether Southwestern Bell Wireless, LLC, Nextel West Corp., Alltel Communications, Inc., and Cingular Wireless LLC were liable to pay Springfield's gross receipts tax. On June 9, 2005, the Court found that cell phones are "telecommunications and telephonic services," within the meaning of Springfield's gross receipts ordinance. It also held that the uncontroverted facts show that Southwestern Bell Wireless, LLC, Nextel West Corp., Alltel Communications, Inc., and Cingular Wireless LLC, furnish some telephone services within the City of Springfield and obtain revenue as a result. Based on these findings, the Court held that each Defendant owed Springfield some amount of gross receipts tax for the relevant time period. The Court reserved judgment on the amount of taxes due or how that amount would be determined because those issues were not raised by Springfield's Motion for Partial Summary Judgment.

The Court entered its June 9, 2005 Order after considering all arguments raised by the parties, including the Defendants' arguments in support of their counterclaims and defenses. The Court specifically rejected the Defendants' argument that Springfield's taxing ordinance did not comply with the Hancock Amendment and violated the Mobile Telecommunications Sourcing Act. It ruled that Springfield's gross receipts tax is not a disguised sales tax even though it is levied in part on sales made to Defendants' customers. It found that Springfield was not required to comply with the Missouri tax

2

collection statutes. Finally, it concluded that Missouri law would permit Springfield to determine whether the Defendants were liable to pay a gross receipts tax in a court proceeding prior to commencement of an administrative collection process.

After the Court entered its Order on June 9, 2005, the Missouri General Assembly passed HB 209 which required Springfield to dismiss its lawsuit against the Defendants. Springfield sought a ruling in state court to determine the constitutionality of HB 209. At the request of the Defendants, the Court stayed this litigation pending the outcome of Springfield's constitutional challenge. After the Missouri Supreme court struck down HB 209 as unconstitutional,[2] the stay was lifted.

After the stay was lifted, Alltel moved to dismiss this case for lack of subject matter jurisdiction. Alternatively, Alltel asked the Court to abstain. In its order of October 17, 2006, the Court denied Alltel's motion to dismiss for lack of subject matter jurisdiction, but concluded that Springfield's ordinance did not authorize Springfield's tax collection claim because of Missouri's exclusive tax remedy doctrine.[3] The Court , therefore, dismissed Springfield's claim for tax collection, but did not vacate its earlier order finding that the Defendant's were liable to pay Springfield's gross receipts tax.

---

[2] *See City of Springfield v. Sprint Spectrum, L.P.,* 203 S.W.3d 177 (Mo. 2006).

[3] The "exclusive tax remedy doctrine" merely provides that both a taxing authority and taxpayer must use the remedies provided by statute to collect or dispute taxes if there is an adequate remedy provided  *See* discussion *infra.*

3

The parties had fully litigated that issue, thereby effectively amending the pleadings.[4]  In addition, the Court concluded that Missouri's exclusive tax remedy doctrine would not be violated by a declaratory judgment that addressed only the question of whether the Defendants were subject to Springfield's gross receipts tax ordinance.

Alltel then complained that it had not had a fair opportunity to litigate the propriety of a declaratory judgment in this case.  In response, the Court vacated its order of June 9, 2005,[5] and permitted Springfield to amend its Complaint to add a separate claim for declaratory judgment.  Alltel and Nextel have now filed Motions to Dismiss Springfield's Amended Complaint [Doc. 457 and Doc. 452 respectively].

In Count I of Springfield's Second Amended Complaint, Springfield seeks to collect past due gross receipts taxes from the Defendants.  In Count II, it seeks a declaratory judgment that Springfield's gross receipts tax ordinance applies to the cell phone services which Defendants provide within the city limits of Springfield and that all Defendants are liable to pay taxes under the ordinance.  Only Alltel and Nextel have filed

---

[4] While Springfield's original Complaint did not separately request a declaratory judgment on the issue of liability, the record shows that this issue was raised by Springfield in its Motion for Partial Summary Judgment and joined by the Defendants in their Opposition to Springfield's Motion for Partial Summary Judgment and by their own counterclaims.  Therefore, pursuant to Federal Rule of Civil Procedure 15, the Court treated Springfield's Motion for Partial Summary Judgment as a request for a declaration of law on Defendants' liability under Springfield's gross receipts tax.  Rule 15 (b) states that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."

[5] It also hereby vacates its Order of October 17, 2006.  That Order and the June 9, 2005 Order are the only two substantive orders that the Court has previously entered in this case.

motions to dismiss these claims. The other Defendants have previously declined an invitation by the Court to dismiss Springfield's tax collection claim based on Missouri's exclusive tax remedy doctrine.[6]

For the following reasons, the Court dismisses without prejudice Springfield's claim for tax collection (Count I) but denies Alltel and Nextel's Motion to Dismiss Springfield's claim for declaratory judgment (Count II).

## I.       Count I - Tax Collection Claim

Alltel and Nextel argue that the Court has no subject matter jurisdiction over Springfield's claim for tax collection because of Missouri's exclusive tax remedy doctrine, which was first articulated in *State ex rel. Hayes v. Snyder*, 139 Mo. 549, 552 (Mo. 1897). In that case, Jackson County Collector Hayes sued the previous owners of a parcel of real estate to collect a personal judgment against them for taxes assessed against the property while they had owned it. The Missouri Supreme Court held that the state's exclusive remedy was to impose a lien on the property for which back taxes were due. *Id.* at 554-55. In reaching this conclusion, the state supreme court reasoned that:

> [a] tax is not a debt in the ordinary sense of that term, as it is not founded upon contract, and as a general thing a debt cannot be created in any other way. Tax proceedings are *in invitum*. The tax is an impost levied by authority of the government for the support of the state, and has none of the characteristics of a contract, the essence of which is an agreement expressed or

---

[6]The posture of this case is quite unusual in that it is a local taxing authority that seeks to invoke the subject matter jurisdiction of the federal court to collect its taxes and to resolve the meaning of its tax ordinance. This may explain why only two of the Defendants have filed motions to dismiss. It is unusual for a taxpayer to have a federal forum to contest the validity of a tax imposed by a municipality.

implied. Therefore, if the statutes of this state make special provisions for the collection of taxes against real estate, and do not apparently contemplate that any others will be necessary, the mode of collection prescribed by statute is exclusive. . . . [W]here the statute undertakes to provide remedies, and those given do not embrace an action at law, a common-law action for the recovery of the tax as a debt will not lie. This is the generally accepted doctrine, though there are exceptions to this general rule; for instance, where right to bring suit is expressly given by statute, or where the implication of an intent to give a remedy by suit may be so strong as to be conclusive, as where the statute provides for a tax, but is silent as to the method of collection.

*Id.* at 553-54 (internal quotations omitted).

In *Kansas City v. Field*, the Missouri Supreme Court again held that "a statutory remedy for the collection of a tax or a special assessment, whether it be by distress or by action, is an exclusive remedy." 285 Mo. 253, 274 (Mo. 1920). *Accord City of St. Louis v. United Rys. Co.*, 174 S.W. 78 (Mo. 1914) (where an ordinance provides a method for enforcing a tax, it will be held to be exclusive); *State ex rel. Steed v. Nolte*, 138 S.W.2d 1016 (Mo. 1940) (en banc) (holding that for tax collection purposes, the city must use the collection procedures set forth in applicable law) Although these Missouri cases are old, Springfield has offered no authority to suggest that Missouri no longer recognizes the exclusive tax remedy doctrine articulated in *Hayes*.

Springfield's ordinances give it a specific mechanism for collecting past due gross receipts taxes. They provide that:

Every person required to pay the license tax levied by this article shall cause to be filed with the director of finance on January 15, April 15, July 15 and October 15 of each year a true statement, under oath, of the gross receipts of such business for the three calendar months preceding the filing of such statement. The director of finance and his authorized agents may investigate the correctness and accuracy of such quarterly statements, and

6

for that purpose shall have access at all reasonable times to the books, documents, papers and records of the licensee.

*Id.* § 70-454.  If a person refuses to pay any tax, the Director may estimate the delinquent taxes and make an assessment based on that estimate.  *Id.* § 70-154.  After the Director notifies the taxpayer of the assessment plus penalties including interest, the taxpayer has ten days to request a hearing to contest the assessment.  *Id.* § 70-152.

In the event a hearing is requested, "[t]he director, employee of the city, or hearing officer appointed by the city manager shall hear the case and make a determination in accordance with the provisions of RSMo ch. 536."  *Id.* at § 70-155.  "Such hearing need not be conducted according to the rules of evidence."  *Id.*  The director is empowered to subpoena witnesses or to issue subpoenas duces tecum for any book, paper, record or memorandum.  *Id.*  "The decision of the hearing officer . . . shall be in writing and shall be subject to appeal under RSMo ch. 536."  *Id.* § 70-156.  If the delinquent taxpayer fails to pay the assessment after the decision becomes final,

the license of such person shall be revoked without further hearing five days after the director mails such person a notice that the license has been revoked, unless the person pays the city the delinquent assessment, including penalties and interest to date, which money shall be held for possible refund by the director while the decision is on appeal. Revocation of such license pursuant to the provisions of this section is not appealable, and such license may only be reinstated by the person paying to the director the money due on the assessment, including all penalties and interest to date.

*Id.* § 70-157.

Reading together all portions of Springfield's Municipal Code chapter 70, the

7

Court concludes that the Code provides a remedial scheme for the collection of delinquent gross receipts tax. Enforcing the ordinance is the responsibility of the City's Director of Finance. All licensees must file quarterly gross receipts reports with the City, which the Director is authorized to investigate and verify. If the licensee refuses to do so, the director may issue subpoenas and demand to inspect records under penalty of revocation of the license. If the Director determines that a licensee had failed to pay its tax obligation, she "shall notify such person of this determination, which determination shall be an assessment of the license fee or tax which is due and owing, plus all penalties including interest." *Id.* § 70-152. That assessment becomes final ten days after it is delivered to the licensee unless the licensee requests a hearing. If a hearing is requested, the Director or a hearing officer "shall hear the case and make a determination in accordance with the provisions of RSMo ch. 536." *Id.* at § 70-155. That determination becomes final after 30 days and may be appealed under Mo. Rev. Stat. ch 536. However, if the licensee fails to pay after the final determination, its license "shall be revoked without further hearing . . . unless [and until] the person pays the city the delinquent assessment." *Id.* § 70-157.

Springfield's code provides a method for assessing gross receipts tax and the administrative process appears to be adequate for purposes of tax assessment.[7] While

---

[7]While Springfield's ordinance is adequate to assess taxes against the Defendants, it is not adequate to resolve the applicability of these taxes to the Defendants when the dispute is one of statutory interpretation. *See discussion infra.*

8

Alltel has refused to file the reports needed to make an assessment, Springfield has the power to make an estimate based on the information available to it. The record shows that Alltel has reported gross receipts revenue collected from customers having a "principal place of use" within the city. While this may not include all revenue subject to gross receipts tax, Springfield has the power to estimate the actual tax due. If Alltel contests the tax, Springfield can subpoena all of Alltel's records. Pending appeal, Springfield can force Alltel to pay the taxes "in escrow" or require Alltel to stop doing business in Springfield.

Springfield has failed to show that it cannot use this administrative process to assess the taxes which it claims are owed by the Defendants. Its tax collection claim must therefore be dismissed. However, contrary to the intimation of Nextel and Alltel, the Court has never found that it lacks subject matter jurisdiction to hear Springfield's claim for tax collection. There is diversity jurisdiction to address Springfield's claim, and Missouri's exclusive tax remedy doctrine cannot divest a federal court of its jurisdiction. Therefore, the Court's dismissal of Springfield's tax collection claim is not because subject matter jurisdiction is lacking. Instead, the dismissal is because Missouri law does not recognize Springfield's claim for tax collection prior to assessment. *See State ex rel. Hayes v. Snyder*, 139 Mo. 549, 552 (Mo. 1897).

While dismissals under Rule 12 (b)(6) are generally with prejudice, the Court is uncertain how a dismissal would be used in subsequent litigation between these parties. Given the contorted procedural history of this dispute, the Court makes this dismissal

9

without prejudice.

## II.    Count II - Declaratory Relief

In Count II, Springfield asks the Court to declare that Defendants' cell phone services provided within the city limits of Springfield are subject to Springfield's gross receipts tax ordinance and, therefore, all Defendants are liable for past due taxes.  As with Count I, Alltel and Nextel seek to dismiss this claim for lack of subject matter jurisdiction.  Their primary argument is that Missouri's exclusive tax remedy doctrine applies to Springfield's declaratory judgment claim and Missouri's exclusive tax remedy doctrine is jurisdictional.  Alltel and Nextel also argue that Springfield has not exhausted its administrative remedies and therefore cannot obtain even a declaration that its tax laws apply to the Defendants.  They state these arguments in many different ways, but all turn on the question of whether Missouri law would permit Springfield to obtain a judicial declaration interpreting its tax ordinance before requiring Springfield to begin its administrative process to assess taxes.

### A.    Missouri Law

The Court finds that Missouri law permits Springfield to seek a judicial determination that its ordinance applies to a specific taxpayer before Springfield begins its administrative assessment process.  As a practical matter, the administrative process created by Springfield is not adequate when a question of statutory interpretation is at the heart of the dispute between the City and its taxpayers.  It does not serve the interest of either a taxpayer or the taxing authority to go through an expensive administrative

10

process to resolve the amount of taxes owed, if no taxes can be collected because the statute does not apply to the taxpayer and, therefore, no taxes are due.

Even if a Springfield administrator can enter an order that the taxes are due,[8] legal review of that ruling could not occur until the administrative process is completed. By that time, both parties have expended significant resources resolving the amount of taxes due, only to learn on judicial review that the ordinance did not cover the services for which the taxes were sought.

Other jurisdictions which recognize similar exclusive tax remedy doctrines have permitted court actions under these limited circumstances. When there is a question of statutory interpretation, these jurisdictions will permit court action to determine the applicability of the tax to a business operating within the jurisdiction. *See* M. L. Cross, Annotation, *Tax Questions as Proper Subject of Action for Declaratory Judgment*, 11 A.L.R.2d 359 (Supp. 2005).

While the Court has been unable to locate a Missouri case directly on point, in other contexts Missouri courts have permitted legal issues to be resolved in court even when administrative remedies were not exhausted. The practical considerations discussed in those cases, *e.g., Premium Standard Farms, Inc. v. Lincoln Township of Putnam County,* 946 S.W.2d 234 (Mo. 1997), are equally applicable when there is a dispute about whether a tax is owed. Furthermore, the Missouri Supreme Court in *Nicolai v. City of St.*

---

[8]The parties dispute whether Springfield's Finance Director has such authority under Missouri law.

*Louis*, 762 S.W.2d 423 (Mo. banc 1989), tacitly approved the use of a declaratory judgment to test the authority of a local taxing authority to collect a tax even when administrative procedures had not been exhausted.

This case is a good example of when significant factual disputes may be avoided if the threshold issue of applicability is resolved first. The initial dispute between the parties is whether Springfield's gross receipts tax ordinance applies to companies that provide cell phone service, as opposed to land line services. Defendants claim that they do not provide telephone services within the meaning of Springfield's ordinance, but the unrefuted evidence is that they do provide "Commercial Mobile Radio" services in the city limits of Springfield. If the Defendants are correct in their interpretation of the City's ordinances, then no taxes are owed to Springfield and all parties can avoid the cost of an expensive administrative assessment action.

For these reasons, the Court concludes that Missouri law permits a taxing authority to obtain a judicial interpretation of its tax ordinance to determine whether a taxpayer is subject to it. Likewise, a Missouri court would not require administrative exhaustion before that issue is presented to a court. The old Missouri cases discussing the exclusive tax remedy doctrine do not discuss whether a declaratory judgment is proper or improper under these circumstances and more recent case law indicates that a declaratory judgment under these circumstances does not violate the exclusive tax remedy doctrine. While Springfield did not create a specific claim for tax collection in its ordinances, Missouri law has authorized declaratory judgments for many years. Therefore, the silence in

12

Springfield's tax ordinance concerning declaratory judgments does not establish that declaratory judgments are impermissible in this context.

**B.    Subject Matter Jurisdiction in Federal Court**

Although the Court has found that Missouri law would permit a state court to hear Springfield's claim for declaratory judgment, the Court must also determine whether that claim can be heard in a federal court, given the special deference which federal courts show to state and local taxing authorities.

Nextel and Alltel argue that even if a state court could hear Springfield's claim, a federal court does not have subject matter jurisdiction to do so. Many of their arguments about federal subject matter jurisdiction are dependent on their assumption that Missouri state courts would not permit Springfield's declaratory judgment action because of Missouri's exclusive tax remedy doctrine. For example, they argue that the Court does not have subject matter jurisdiction because *Erie RR Co. v. Tompkins*, 304 U.S. 64 (1938), requires a federal court to apply state law in a diversity action. Because the Defendants assume that Missouri would not permit Springfield's declaratory judgment action, they conclude it would be an *Erie* violation for the federal court to hear Springfield's claim and, therefore, the Court lacks subject matter jurisdiction. Similarly, they argue that a federal court does not have subject matter jurisdiction over any issue that has been committed for initial decision to an administrative body. *See Public Service Commission of Utah v. Wycoff Co., Inc.*, 344 U.S. 237, 241 (1952). They also contend that there is no federal subject matter jurisdiction because Springfield has an adequate

13

remedy at law. Each of these arguments, however, necessarily fails if Missouri law recognizes Springfield's declaratory judgment claim and does not require Springfield's declaratory judgment claim to be administratively exhausted first.

Because the Court has diversity jurisdiction and has already found that Missouri law would authorize Springfield's declaratory judgment, it rejects Defendants' contention that this Court lacks federal subject matter jurisdiction to hear Springfield's declaratory judgment claim. Indeed, the Court's subject matter jurisdiction seems evident given the fact that a similar issue also grounded in Missouri law was litigated all the way to the United States Supreme Court. *See City of St. Louis v. United Railways Co. of St. Louis*, 174 S.W. 78, 82 (Mo. 1915).

### C. Justiciability

Defendants also argue that there is a no case or controversy before the Court. Yet, Defendants have refused to pay Springfield's tax, and Springfield claims that the taxes are owed. Springfield seeks a declaration that the ordinance covers the Defendants' conduct, and the Defendants are liable to pay the tax. There is little difference between this claim and one where an insurance company seeks a declaratory judgment that there is not insurance coverage. Such claims are routinely heard in the federal court.

Furthermore, any judgment in this case is not advisory as argued by the Defendants. The Defendants would not have fought so vigorously if a judgment here would be of no consequence. The fact that the Missouri legislature actually passed a statute to require Springfield to dismiss this lawsuit suggests that the consequences of the

case are not ephemeral.

### D.  Venue

Nextel and Alltel argue that this case should not have been filed in the Central Division of the United States District Court for the Western District of Missouri because there is no divisional venue.  Venue, however, is determined at the time a lawsuit is filed. At the time this suit was filed, there was divisional venue in the Central Division because Jefferson City was also a named plaintiff.  The relevant Defendants have settled their dispute with Jefferson City, but that does not alter the venue of the Court to hear the claims of Springfield, the co-plaintiff.  Any trial concerning those claims will be held in Springfield at the request of the Defendants.

### E.  Missouri versus Federal Declaratory Judgment Acts

The Defendants' arguments concerning the applicability of the Missouri and federal Declaratory Judgment Acts are rejected summarily.  The Court has already held that for purposes of this declaratory judgment action, Springfield does not have an adequate remedy at law.  Furthermore, the federal Declaratory Judgment Act controls here.  *Farmers Alliance Mutual Ins. Co. v. Jones*, 570 F.2d 1384, 1386 (10th Cir. 1978); *Ohio Casualty Ins. Co. v. Marr*, 98 F.2d 973, 975 (10th Cir. 1938); *Amerilink Corp. v. Cerco, Inc.*, 1996 U.S. Dist. LEXIS 6207 (E.D. Mo. 1996); *Haagen-Dazs Shoppe Co., Inc. v. Born*, 897 F. Supp. 122, 126 (S.D.N.Y. 1995); *Committee for Educational Equality v. State*, 878 S.W.2d 446, 452 (Mo. 1994), and it does not require proof that there is no adequate remedy at law.  In addition, as previously explained, Missouri law would permit

a declaratory judgment had this case been filed in state court.

## F.     Abstention

Early in this case, the Court asked the parties why a local tax case was in federal court.  At that time, no one stood up and asked the Court to abstain.  The parties were apparently content to have this dispute resolved in federal court.  However, now that the Court has decided that the Defendants are subject to Springfield's tax, Alltel and Nextel have decided that the Court does not have subject matter jurisdiction to even address the merits of the dispute, and if it does have subject matter jurisdiction, the Court should abstain.

### 1.     Judicially Created Abstention

In support of their abstention argument, Alltel and Nextel cite a number of federal cases that suggest that abstention is appropriate when a local tax dispute is raised in a federal court.  For example, in *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293 (1943), the United States Supreme Court held that federal courts should abstain if they are asked to enjoin or declare invalid a state tax.  *Also see Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100 (1981) (discussing when abstention is appropriate if administrative exhaustion has not occurred or when a dispute about local taxes arises).  Abstention should also be considered when a state or local authority has adopted a complex administrative proceeding to resolve local disputes involving a governmental entity.  *See Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).  *Also see Public Service Commission of Utah v. Wycoff Co., Inc.*, 344 U.S. 237, 241 (1952) (A declaratory

16

judgment should not be used to "preempt and prejudice issues that are committed for an initial decision to an administrative body . . . ."). Alltel and Nextel also seek abstention under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), which held that a federal court should abstain in cases where there is a parallel state action and the issue in dispute involves an unclear state law.

Comity and "Our Federalism" are the unifying principles in all of these cases cited by Defendants Alltel and Nextel. Those principles have led the Supreme Court to conclude that the United States Constitution contemplates a significant division of power between the states and federal governments; thus, the federal government should respect the right of the states to resolve certain matters locally. Federal interference with state administrative matters, particularly those involving taxes, would violate these principals of comity and "Our Federalism."

All of the cases cited by Alltel and Nextel, however, are distinguishable because Springfield is the plaintiff in this case. This is not a case where a taxpayer is seeking to avoid state procedures by invoking the jurisdiction of the federal court. It is the taxing authority that is invoking federal jurisdiction. When the taxing authority chooses the federal forum, the reasoning behind the federal abstention cases relied upon by Nextel and Alltel no longer apply. Comity and "Our Federalism" are not offended except in those situations where the federal courts encroach on the autonomy of local authorities. It would be ironic to conclude that a municipality's authority is best respected by denying it access to the federal courts.

17

Defendants have suggested that *California v. Grace Brethren Church*, 457 U.S. 393 (1982), and *Franchise Tax Bd. of California v. Construction Laborers Vacation Trust*, 463 U.S. 1 (1983), are cases where a state or local entity sought and was denied a federal forum, but they are not correct. In *Grace Brethren*, the litigation was initiated originally in two separate suits, one filed by a taxpayer in federal court and one by a taxpayer in state court. *Id.* at 399 n.8. A federal district court eventually enjoined the State of California from collecting its unemployment taxes and the State successfully appealed to the United States Supreme Court. Because *Grace Brethren* involved an attempt by a taxpayer to enjoin a state, it is not persuasive. In *Franchise Tax*, the State of California was denied access to the federal courts, but that was because neither federal question jurisdiction nor diversity existed. There was simply no statutory basis for subject matter jurisdiction in federal court. In contrast, Springfield's claim is clearly supported by diversity jurisdiction.

Furthermore, any protections to which the state and local authorities are entitled under abstention doctrine are clearly waivable by them. If a state can waive its Eleventh Amendment right by voluntarily suing in federal court, *see Lapides v. Board of Regents of University System of Georgia*, 535 U.S. 613 (2002), it must necessarily follow that a judicially created abstention doctrine can also be waived. It is, therefore, not surprising that the Court has been unable to identify a single case in which a taxing authority has invoked the jurisdiction of the federal court to resolve a tax dispute and the federal court abstained.

18

Finally, the judicially created abstention doctrines raised by the Defendants have already come under substantial criticism. *See* Robert J. Pushaw, *Bridging the Enforcement Gap in Constitutional Law*, 46 William & Mary L. Rev. 1289 (2004). Article III of the United States Constitution gives Congress the authority to establish the jurisdiction of the lower federal courts, and Congress has said that this Court has jurisdiction because of diversity. *See* 28 U.S.C. 1332. Absent clear precedent, the Court will not reject Congress's directive.

### 2. Statutory Abstention

In *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995), the United States Supreme Court, interpreting the Declaratory Judgment Act, concluded that a court may decline jurisdiction to hear a declaratory judgment action when there is a parallel state court proceeding. Nextel and Alltel argue that *Wilton v. Seven Falls Co.* requires the Court to decline jurisdiction because there are parallel state court actions which will raise the same issue currently before this Court. *Wilton*, however, does not require anything; it permits a trial court to decline jurisdiction in its discretion. "In the declaratory judgment context, the normal principal that federal court should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id.* at 288. The Eighth Circuit has referred to the discretion described in *Wilton* as broad. *Scottsdale Insurance Co. v. Detco Industries, Inc.*, 426 F.3d 994 (8th Cir. 2005*).* The sound administration of justice in this case dictates that abstention should not be granted even if there is a parallel state court action. It is apparent that Nextel and Alltel have raised the

19

issue of abstention because they were unsuccessful on the merits of their defense.  It would not promote the sound administration of justice to permit a losing party to take advantage of abstention under those circumstances.

In addition, there is no parallel state court action.  Springfield's claim against Sprint does not involve Alltel or Nextel, or any of the other Defendants.  Alltel's refund suit, which was filed in state court on the same day that Springfield filed its Second Amended Complaint in this case, is not the mirror image of Springfield's declaratory judgment action, as were the two suits in *Wilton.*  Furthermore, it does not involve all the Defendants.  Indeed, because it is a refund that Alltel seeks in state court, the state court may never reach the issue of whether Springfield's gross receipts tax ordinance applies to Alltel, given the preliminary hurdles that Alltel must satisfy in a refund case.  Therefore, there is no parallel state action that justifies this Court's abstention.

The Eighth Circuit, however, has said that a court might still abstain even when there is not a parallel action.  *See Scottsdale Insurance Co. v. Detco Industries, Inc.*, 426 F.3d 994 (8th Cir. 2005).  In *Scottsdale*, the Eighth Circuit identified six factors for the Court to consider when deciding the abstention issue.  Five of those six factors weigh in favor of the Court exercising its jurisdiction in this case.

Springfield's declaratory judgment action will serve a useful purpose because it permits the parties in advance of a costly administrative proceeding to resolve whether Springfield's ordinance applies to Defendants' cell phone services.  Resolution of liability permits the parties to wisely invest in an administrative assessment action.

20

As previously indicated, a refund suit has issues which might preclude the state court from ever reaching the question of whether the tax was owed. Therefore, any overlapping issue might never be reached by the state court in Alltel's state action. That suit is in its infancy and this federal case has been in progress for years. In addition, there is no economy to be gained by abstention because only two defendants out of six have asked the Court to abstain.

Finally, Alltel engaged in procedural fencing when it filed its refund case in state court. Alltel filed its refund case on the same day that Springfield amended its complaint to conform it to the issues actually litigated in this case nearly two years ago. In addition, both Alltel and Nextel failed to raise their abstention arguments when confronted with Springfield's Motion for Partial Summary Judgment early in this litigation. While Alltel and Nextel contend that Springfield's recent addition of a declaratory judgment claim changed the landscape, some of their arguments now raised for abstention were equally applicable to Springfield's Motion for Partial Summary Judgment. Given this record, the Court finds that it was this Court's Order of June 9, 2005, that motivated Alltel and Nextel to seek abstention, not Springfield's recent amendment to conform the pleadings to what had already been litigated.

For all these reasons, the Court has exercised its discretion to hear Counts I and II of Springfield's Second Amended Complaint.

III.    **Remaining Wireless Defendants**

Cingular Wireless LLC, and Southwestern Bell Wireless LLC, did not join in

21

Alltel and Nextel's Motion to Dismiss. Nor have they accepted the Court's invitation to file their own motion to dismiss Springfield's tax collection claim. Nonetheless, the Court dismisses Count I of Springfield's Complaint as to Cingular Wireless LLC and Southwestern Bell Wireless LLC.

Missouri's exclusive tax remedy doctrine precludes this Court from granting relief on Springfield's tax collection claim against these Defendants. A district court has the inherent power to dismiss a complaint *sua sponte* under Rule 12(b)(6) as long as the dismissal does not precede service of process. *Smith v. Boyd*, 945 F.2d 1041, 1043 (8th Cir. 1991); *Mildfelt v. Circuit Court*, 827 F.2d 343, 345 (8th Cir. 1987) (per curiam) ("A district court has the power to sua sponte dismiss a complaint for failure to state a claim."); *see also* 5A C. Wright & A. Miller, Federal Practice and Procedure § 1357, at 301 (2d ed. 1990). Because of Missouri's exclusive tax remedy doctrine, Springfield's tax collection claim against Cingular Wireless LLC and Southwestern Bell Wireless LLC fails to state a claim on which relief can be granted. The Court, therefore, dismisses without prejudice Springfield's tax collection claims as to Defendants Alltel Communications, Inc.; Cingular Wireless LLC; Southwestern Bell Wireless LLC; and Nextel West Corporation, so that such claims may be pursued administratively.

## IV. Conclusion

Count I of Springfield's Complaint is dismissed without prejudice for failure to state a claim. The dismissal applies to Alltel Communications, Inc.; Cingular Wireless LLC; Southwestern Bell Wireless LLC; and Nextel West Corporation. In all other

22

respects, Alltel and Nextel's Motions to Dismiss are DENIED.

IT IS SO ORDERED.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated:  July 3, 2007
Jefferson City, Missouri